UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00058-GNS

KERSSEL TYSON and OHSSEL TYSON,
Individually and as Parents, Natural Guardians,
and Next Friends of K.T., a minor child                                    PLAINTIFFS

v.

UNITED STATES OF AMERICA;
MANMEET K. SANDHU, M.D.; and
HEATHER FINNEY, C.N.M.                                                     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 21, 35), Defendants' Motions to Stay Discovery (DN 31, 34), and Plaintiffs' Motion for Extension of Time to File Response/Reply to Defendant's Motion to Dismiss (DN 23). These motions are ripe for adjudication. For the reasons that follow, Defendants' motions to dismiss are **GRANTED**. All other motions are **DENIED**.

### I.  BACKGROUND

Beginning on November 6, 2017, Plaintiff Kerssel Tyson ("Kerssel") received routine prenatal care and treatment from Defendant Certified Nurse Midwife Heather Finney ("Finney") at Fairview Community Health Center ("Fairview"). (Compl. ¶ 18, DN 1). On February 8, 2018, Kerssel was admitted to The Medical Center at Bowling Green ("Medical Center") due to the onset of labor. (Compl. ¶ 23). Defendant Doctor Manmeet K. Sandhu ("Dr. Sandhu") was her admitting and attending physician. (Compl. ¶ 23). Plaintiffs allege medical negligence on the part of Finney and Dr. Sandhu resulting in a multitude of medical ailments suffered by Plaintiffs' child, K.T., from which K.T. will continue to suffer in the future. (Compl. ¶¶ 193-210). Plaintiffs also assert

a cause of action against the United States under the Federal Tort Claims Act ("FTCA") and the Federally Supported Health Centers Assistance Act ("FSHCAA"). (Compl. ¶ 9). Plaintiffs allege Finney and Dr. Sandhu are employees of Fairview, which is alleged to be a federal qualified health care center operated by the United States. (Compl. ¶¶ 4-5).

Plaintiffs filed their Complaint on May 14, 2019.[1] (Compl. 31). The United States subsequently moved to dismiss the claims asserted against it. (Def.'s Mot. Dismiss 12, DN 21). In addition to responding to the United States' Motion to Dismiss, Plaintiffs moved for an extension to time to respond to the United States' motion, asking for more time to conduct discovery. (Pls.' Resp. Def's Mot. Dismiss, DN 26; Pls.' Mot. Extension Time, DN 23). On November 8, 2019, the United States moved to stay discovery. (Def.'s Mot. Stay Disc. 5, DN 31). On November 13, 2019, Finney and Dr. Sandhu moved to dismiss Plaintiffs' claims and to stay discovery. (Defs.' Mot. Dismiss 5, DN 35; Defs.' Mot. Stay Disc. 2, DN 34).

## II. DISCUSSION

### A. United States' Motion to Dismiss, Plaintiffs' Motion for Extension of Time, and United States' Motion to Stay Discovery

The United States moves under Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiffs' claims against it for lack of subject matter jurisdiction. (Def.'s Mot. Dismiss 1). Plaintiffs move for an extension of time to respond to the United States' motion, arguing that more discovery is needed; Plaintiffs have nevertheless responded to the United States' motion. (Pls.' Mot. Extension Time ¶ 8; Pls.'

---

[1] Before Plaintiffs filed the instant action, Plaintiffs filed an action against the Medical Center and Commonwealth Health Corporation, Inc. d/b/a Women's Health Specialists ("WHS") in Kentucky state court on November 15, 2018. (Defs.' Mot. Dismiss Ex. A, DN 21-1). In their state court complaint, Plaintiffs allege that Dr. Sandhu and Finney "were agents, servants, and/or employees of Defendant Women's Health" when the events giving rise to Plaintiffs' medical negligence claims arose. (Defs.' Mot. Dismiss Ex. A, ¶ 199). Plaintiffs' medical negligence claims against the Medical Center and WHS in the state court action arise from the same events involved in the instant action. (Defs.' Mot. Dismiss Ex. A, ¶¶ 18-214).

2

Resp. Def.'s Mot. Dismiss 1). The United States also moves to stay discovery. (Def.'s Mot. Stay Disc. 1).

"The FTCA provides 'a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal *employees* acting within the scope of their employment.'" *Zion v. United States*, 913 F. Supp. 2d 379, 383 (W.D. Ky. 2012) (emphasis added) (quoting *United States v. Orleans*, 425 U.S. 807, 813 (1976)). "The FTCA specifically excludes 'any contractor with the United States' from its coverage, but the FSHCAA expands the definition of employee under the FTCA to include contractors, subject to certain qualifications." *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254, 1264 (S.D. Fla. 2001) (citing *Tisdale v. United States*, 62 F.3d 1367, 1371 (11th Cir. 1995)).

The dispute between the parties at this stage of the case rests on whether Finney and Dr. Sandhu constitute federal employees under the FTCA or covered contractors under the FSHCAA to make the United States liable for their actions. "This is a question of subject matter jurisdiction.[2] Federal law governs this issue. Under federal law, the burden to establish jurisdiction rests on the Plaintiff." *Id*. at 383 (citations omitted).

As the Sixth Circuit has stated:

> A Rule 12(b)(1) motion [for lack of subject matter jurisdiction] can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists.

*DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *RMI Titanium Co. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th

---

[2] Although Plaintiffs suggest a dispute as to whether courts apply the 12(b)(1) or 12(b)(6) standard in evaluating this issue, the Sixth Circuit in *Durbin v. United States*, 996 F.2d 1214, 1993 WL 219868, at *1 (6th Cir. 1993), held that the 12(b)(1) standard is to be used.

3

Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 992 F.2d 320, 325 (6th Cir. 1990)). The United States makes a factual attack here, so Plaintiffs are not "entitled to any presumptive truthfulness as to [their] factual allegations. Rather, 'this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge.'" *Zion*, 913 F. Supp. 2d at 383 (internal citation omitted) (citation omitted).

In analyzing this issue, the Southern District of Florida's decision in *Sanchez* is instructive because the facts there closely mirror this case.[3] In *Sanchez*, the plaintiffs brought suit against three medical professionals for negligence in the prenatal and delivery care related to the birth of the plaintiffs' child. *Sanchez*, 170 F. Supp. 2d at 1259. Liability on the part of the United States was sought pursuant to the FTCA and FSHCAA. *Id*. at 1263-64. That court identified the issue before it as follows:

> The exclusive remedy for claims against the United States for the tortious or negligent conduct of its employees is under the FTCA. Suits under the FTCA are limited to those that involve claims arising from "the negligent or wrongful act or omission of any employee of the Government . . . acting within the scope of his office or employment." The FSHCAA, 42 U.S.C. § 233(g), provides an exclusive remedy under the FTCA, 28 U.S.C. § 1346(b), for medical malpractice of employees or contractors of the Public Health Service. The FTCA specifically excludes "any contractor with the United States" from its coverage, but the FSHCAA expands the definition of employee under the FTCA to include contractors, subject to certain qualifications. Thus, prior to the enactment of the FSHCAA, the United States was not liable under the FTCA for the acts or omissions of contractors. The issue presented, therefore, is whether [the medical professionals] qualify under the statutory language of the FTCA and FSHCAA as employees or contractors of the Public Health Service.

*Id.* (internal citations omitted). The court then further expounded on the application of the FTCA:

> The FTCA was not intended to apply to all persons or groups that are in any way associated or receive funding from the federal government. As stated above, the FTCA applies to *employees* of the federal government. An "'[e]mployee of the

---

[3] Although *Sanchez* was a summary judgment case and the present motion is to dismiss the case, that difference in procedural posture is irrelevant for purposes of *Sanchez*'s articulation of the rules of law governing application of the FTCA and FSHCAA. *Sanchez*, 170 F. Supp. 2d at 1262-63.

> government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States."
>
> The standard for determining whether a party is an employee of the federal government or an independent contractor was established in *United States v. Orleans*, 425 U.S. 807 (1976). In that case, the court held that the determining factor was the level of control exercised by the federal government over the individual or agency. The government's ability to compel compliance with standards, rules, and regulations was not important. Rather, in order to be considered a federal employee, the government had to have some level of control or supervision over the person's physical conduct and his or her day-to-day functions.
>
> . . . "[T]he contract and the terms in fixing the relationship of the offending party are critical[.]"
>
> . . . Aside from the contract itself, courts have examined other factors to determine the degree of control exercised by the government. These factors include: (1) the payment of salary and insurance premiums; (2) the payment of taxes; (3) the intent of the parties; and (4) whether the government controlled the manner and method in which the doctor conducted his or her activities.
>
> . . .
>
> Other courts have had occasion to apply the principles of *Orleans* to private physicians working under contractual relationships with medical facilities operated by or receiving funds from the United States. All of the circuits consistently have held that physicians in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, not employees of the government for FTCA purposes. It is noteworthy that, in the few instances when courts have found the physicians to be employees rather than contractors, the United States was the party arguing that the physician was an employee under the FTCA.

*Id.* at 1264-68 (emphasis in original) (internal citations omitted) (citations omitted). The court applied these rules, finding that the three medical professionals did not constitute "employees" for purposes of the FTCA and concluding that the United States could not be held liable for the acts of the medical professionals. *Id*. at 1268.

On the same issue of whether certain individuals constitute employees or contractors for FTCA purposes, this Court in *Zion* focused on the language of the pertinent contract to reach the same conclusion as the Court in *Sanchez* on the United States's motion to dismiss. *Zion*, 913 F. Supp. 2d at 382-84.

As in *Sanchez* and *Zion*, the analysis here starts with the pertinent contract which evidences no right of control over Dr. Sandhu and Finney by Fairview so as to afford application of the FTCA. (Def.'s Mot. Dismiss Ex. B, at 2-9, DN 21-2). Like in *Sanchez*, the contract here is between Fairview—i.e., the public health entity—and Dr. Sandhu and Finney's actual *employer*, WHS, a physician group practice specializing in obstetrics and gynecology, not between Fairview and the individual medical professionals. *Sanchez*, 170 F. Supp. 2d at 1265; (Def.'s Mot. Dismiss Ex. B, at 3). In asserting that Dr. Sandhu and Finney are employees of WHS, the United States has included billing records evidencing payment by Fairview to WHS for prenatal services rendered by Dr. Sandhu and Finney. (Def.'s Mot. Dismiss Ex. C). Just like the contract in *Sanchez*, the contract here "makes no reference to the individual [medical professionals.]" *Sanchez*, 170 F. Supp. 2d at 1265. Also like in *Sanchez*, "[n]owhere does the agreement state that the professional association or the doctors will be subject to the [eligible entity's] control or supervision." *Id*. In fact, as in *Sanchez*, "the opposite appears to be true[,]" meaning there is no indication that Fairview exerts any control over Dr. Sandhu or Finney. The contract here "outlines [the medical professionals'] major responsibilities [but] does not prescribe how [the medical professionals] must perform those responsibilities." (Def.'s Mot. Dismiss Ex. B); *see Zion*, 913 F. Supp. 2d at 384 (citing *Cowden v. U.S. Dep't of Labor*, No. 04-CV-53-JMH, 2005 WL 1691036, at *12 (E.D. Ky. July 18, 2005) (holding that because the alleged employee entity hired and retained its own staff, maintained responsibility for the administration and operation of the

government building, and the government only dictated that the entity abide by broad guidelines, the entity was an independent contractor)). The contract here likewise "does not provide a procedural guideline or a detailed manual for the work." *Zion*, 913 F. Supp. 2d at 384.

Plaintiffs specifically point to the following language in the contract purportedly evidencing Fairview's control over Dr. Sandhu and Finney: "Each party shall comply with all applicable standards of practice for provision of services to Fairview patients, including, but not limited to, guidelines adopted by the American College of Obstetrics and Gynecology." (Def.'s Mot. Dismiss Ex. B, ¶ 16). Neither Dr. Sandhu nor Finney is a party to the contract, however; the agreement is indisputably between WHS and Fairview. (Def.'s Mot. Dismiss Ex. B, at 2). Further, instead of evidencing any sort of control over Dr. Sandhu and Finney's work by Fairview, this statement instead simply instructs all parties to the contract to abide by the relevant governing standards applicable to medical professionals. This type of "broad guideline[]" does not establish a "direct role" on the part of Fairview in the supervision of Dr. Sandhu and Finney's day-to-day operations. *See Cowden*, 2005 WL 1691036, at *12; *Zion*, 913 F. Supp. 2d at 384; *compare with Bravo v. United States*, 532 F.3d 1154, 1160 (11th Cir. 2008) (holding doctor to be an employee of eligible entity where contract stated "[t]he contractor OB/GYN physician activities shall be subject to day-to-day direction by Navy personnel in a manner comparable to the direction over Navy uniformed and civil personnel engaged in comparable work" and that the doctor must "comply[] with directions received from Navy hospital professional personnel in the course of patient care activities.").

Moreover, the medical professionals in the present case "did not receive any of the benefits provided to employees of the [eligible entity]." There is no indication that the medical professionals here "receive sick leave, vacation pay, health insurance, life insurance, or private

medical malpractice insurance from the [eligible entity]." *Sanchez*, 170 F. Supp. 2d at 1265. Also like in *Sanchez*, WHS—not Dr. Sandhu or Finney—directly receives compensation from Fairview. (Def.'s Mot. Dismiss Ex. B, at 4; Def.'s Mot. Dismiss Ex. C, DN 21-3); *see Sanchez*, 170 F. Supp. 2d at 1265.

At the end of the day, the evidence before the Court indicates that no one affiliated with the public health entity, Fairview, "supervised the individual [medical professionals] on a day-to-day basis." *Sanchez*, 170 F. Supp. 2d at 1266 (citing *Linkous v. United States*, 142 F.3d 271, 276 (5th Cir. 1998)). In other words, the record establishes that "the government ha[s] [no] . . . level of control or supervision over [the medical professional]'s physical conduct and his or her day-to-day functions." *Id*. at 1264-65 (citations omitted). Neither Dr. Sandhu nor Finney can be characterized as federal employees so as to afford application of the FTCA.

The Court in *Sanchez* also discussed the FSHCAA and the rules governing its application:

> In 1993, Congress amended 42 U.S.C. § 233 to extend FTCA protection to qualifying federally supported health centers. The FSHCAA sought to eliminate the expense borne by federally funded health centers for medical malpractice insurance, enabling the clinics to funnel more federal dollars into patient care. The FSHCAA defined a Public Health Service employee to include "an entity described in [§ 233(g)(4)], and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner (subject to paragraph 5.") . . .
>
> The expanded definition of a "contract employee" under § 233(g)(1)(A) of the Act to certain contractors of qualified health centers is not an unlimited extension to all contractors. The text of § 233(g) states "[and] any contractor of such an entity who is a physician or other licensed or certified health care practitioner." Under this provision, a physician is a contract employee only if he or she has entered into a contract with a qualified entity . . . . Because the [relevant] agreement was between [the physician's employer] and the [qualified entity], the United States argues that there was no individual contract between [the physicians] and the [qualified entity] and, therefore, those doctors cannot claim protection under the FTCA. . . .
>
> The Eleventh Circuit addressed a similar issue in *Dedrick v. Youngblood*, 200 F.3d 744 (11th Cir. 2000), where it held that a doctor who provided services to an eligible entity pursuant to a contract between the entity and the doctor's employer did not

qualified as a contractor under the FSHCAA. The doctor in *Dedrick* . . . was an employee of Capstone Health Services Foundation. [The doctor] provided medical services to a federally supported health center pursuant to a contract entered into between the health center and Capstone Health Services Foundation. The Eleventh Circuit concluded that [the doctor] was not entitled to coverage under the FSHCAA because "strict interpretation requires that a contractor be an 'individual' who contracts with an eligible entity." The Eleventh Circuit reasoned:

> The statutory language of the [FSHCAA] requires us to distinguish contracts by which an individual physician contracts with the eligible entity and those where the physician uses a separate entity, such as Capstone, to contract with the eligible entity. [The eligible entity] contracts with Capstone, his employer. Although [the doctor] is a licensed physician who provided services to the patients of [the eligible entity] in the area of obstetrics, he did so pursuant to his contractual relationship with Capstone, not based on any contractor relationship with [the eligible entity]. . . . [The doctor] is an employee of the contractor—Capstone. The statutory expansion of government liability under the FTCA does not apply in this case because there is no direct contractual relationship between the eligible entity and the physician.

*Id.* at 1269-70 (internal citations omitted) (citation omitted). In sum, only if a contract exists directly between the medical professionals and the qualified entity, not between the business entity employing the medical professionals and the qualified entity, may suit be brought under the FSHCAA. Here, the record contains no contract between Fairview, i.e., the eligible entity, and Finney and Dr. Sandhu, i.e., the medical professionals; rather, as noted above, the contract is between Finney's and Dr. Sandhu's employer, i.e., WHS, and Fairview. (Def.'s Mot. Dismiss Ex. B, at 2-9). As such, Finney and Dr. Sandhu do not constitute covered contractors under the FSHCAA so as to make applicable the FTCA.

Plaintiffs attempt to avoid these conclusions by asking for an extension of time to further respond to the United States' motion to dismiss to be able to engage in discovery in hopes of uncovering information that would support application of the FTCA. (Pls.' Mot. Extension Time 3). It must be recognized, however, that:

> The party opposing dismissal and requesting discovery has the burden of demonstrating the need for it. The party is "'not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.'" "Moreover, the burden is greater where . . . 'the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery.'"

*Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 810 (E.D. Mich. 2015) (internal citations omitted) (citation omitted). "'[W]here the facts are relatively simple, [and] substantially uncontroverted, and the law is not complex,' . . . a district court [is] justified in ruling on a motion under Fed. R. Civ. P. 12(b)(1) without pausing to make findings on disputed questions of fact." *Commodities Exp. Co. v. U.S. Customs Serv.*, 888 F.2d 431, 436-37 (6th Cir. 1989) (quoting *Cook v. Providence Hosp.*, 820 F.2d 176, 178 (6th Cir. 1987)).

Plaintiffs have not met their burden of showing that the requested response time extension to conduct discovery is likely to produce facts necessary to withstand the United States' motion to dismiss. Plaintiffs generally assert that they need "to conduct discovery related to the status and employment of Defendants Sandhu and Finney." (Pls.' Mot. Extension Time 2). Yet, the record contains the contract between WHS and Fairview coupled with billing records evidencing Dr. Sandhu and Finney to be employees of WHS. (Def.'s Mot. Dismiss Exs. B & C). The record also contains the declaration of the Executive Director/CEO of Fairview, Chris Keyser ("Keyser"), stating that no other relevant contract exists between those entities. (Keyser Decl. ¶ 2, DN 21-4). In the declaration, Keyser also states that "[Fairview] did not and does not . . . control the day-to-day obstetric or gynecological medical care rendered by WHS, whether at [Fairview] or at another facility." (Keyser Decl. ¶ 3). The United States has refuted Plaintiffs' contention that Fairview exerted control over these individuals to afford application of the FTCA and allow Plaintiffs to seek monetary recovery from the United States.

Furthermore, the Court can discern no possible information that Plaintiffs could obtain to warrant departure from "[a]ll of the circuits [whom] consistently have held that physicians[4] in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, not employees of the government for FTCA purposes." *Sanchez*, 170 F. Supp. 2d at 1267 (citing *Duplan v. Harper*, 188 F.3d 1195, 1200-01 (10th Cir. 1999); *Robb v. United States*, 80 F.3d 884, 890 (4th Cir. 1996); *Carrillo v. United States*, 5 F.3d 1302, 1304-1306 (9th Cir. 1993); *Broussard v. United States*, 989 F.2d 171, 174-76 (5th Cir. 1993); *Leone v. United States*, 910 F.2d 46, 48-51 (2d Cir. 1990); *Lilly v. Fieldstone*, 876 F.2d 857, 859-60 (10th Cir. 1989); *Lurch v. United States*, 719 F.2d 333, 336-38 (10th Cir. 1983); *Bernie v. United States*, 712 F.2d 1271, 1273 (8th Cir. 1983)); *see also Bryant v. United States*, No. 98-1495-PCT-RCB, 2000 WL 33201357, at *3 (D. Ariz. 2000) ("Several courts have considered the independent contractor exception in relation to physicians who have contracted with the United States to provide services[,] . . . unanimously h[olding] that such contract physicians are independent contractors and not employees of the government." (citations omitted)).

Additionally, for purposes of the FSHCAA, it is not likely that Fairview would possess an additional direct contractual relationship with Finney and Dr. Sandhu that would afford application of that statute. The record contains the relevant contract between Fairview and WHS, i.e., Finney and Dr. Sandhu's employer. (Def.'s Mot. Dismiss Ex. B). Also included in the record are stipulations made by the Medical Center and WHS in the state court action between those parties

---

[4] Although Finney is a certified nurse midwife and not a physician, there is no reason to treat her differently from Dr. Sandhu in light of Keyser's statement that Fairview exerts no control over any of WHS's employees or activities related to obstetrical and gynecological care. (Keyser Aff. ¶¶ 3-4).

11

declaring that Dr. Sandhu and Finney were employees and agents of WHS and not Fairview. (Defs.' Mot. Dismiss Ex. 1, ¶¶ 3, at 6-11, DN 35-1; Defs.' Mot. Dismiss Ex. 2, ¶ 3, at 6-11, DN 35-2). Keyser, in her declaration, explicitly states that no other relevant contract exists. (Keyser Decl. ¶ 2).

Another significant factor strongly suggesting that no contractual relationship exists between Fairview and Finney and Dr. Sandhu is the fact that it would be in Finney and Dr. Sandhu's best interests to proclaim the existence of such a contract, which they have not:

> Although the FTCA generally covers only employees of the federal government, under the FSHCAA, federally supported health centers, their employees, and certain contractors are deemed to be employees of the Public Health Service ("PHS") for the purpose of medical malpractice suits. *Once a person is deemed an employee of the PHS, the FTCA provides the exclusive remedy for alleged malpractice. Under the FTCA, the government will be substituted as the party-defendant in place of the individual defendant . . . .*

*Ismie Mut. Ins. Co. v. U.S. Dep't of Health & Human Servs.*, 413 F. Supp. 2d 954, 955-56 (N.D. Ill. 2006) (emphasis added) (internal citations omitted). In other words, Finney and Dr. Sandhu would be immune from suit if the FSHCAA and FTCA were to apply. *See McLaurin v. United States*, 392 F.3d 774, 777 (5th Cir. 2004) ("Under the FSHCAA, the [Public Health Service] may deem employees of qualified and eligible community health care centers as government employees entitled to immunity under the FTCA. *Once the PHS deems an employee of a qualified community health care center to be a PHS employee, the employee enjoys absolute immunity from common law tort claims, and an injured party's exclusive remedy is against the government under the FTCA*." (emphasis added) (citations omitted)); *see also* Daniel A. Morris, *Federal Tort Claims* § 10:1 (June 2019 update) ("When an action is permitted against the United States under the FTCA, an action is not permitted against the government's medical personnel whose negligent act or omission caused the injury." (citing 28 U.S.C. § 2679)). The fact that Finney and Dr. Sandhu

have denied any contract between themselves and Fairview, which would shield them entirely from all of Plaintiffs' claims, strongly supports its nonexistence.

These factors convince the Court that discovery is not likely to reveal information, specifically, an additional contract directly between Fairview and Dr. Sandhu and Finney, potentially affording application of the FSHCAA.

In sum, Dr. Sandhu and Finney were employees of a private organization, WHS, as evidenced by WHS's billing records, under contract to provide medical services for Fairview, as evidenced by the contract between WHS and Fairview. Based on the unanimous agreement among courts, this characterizes them as contractors for FTCA purposes, and there is no reasonable likelihood that discovery would yield information to change that fact. *See Zion*, 913 F. Supp. 2d at 386, 384 (declining further discovery at dismissal stage and concluding that tortfeasor was an independent contractor "based upon the contractual language alone"); *see also Lumpkins v. United States*, 187 F. Supp. 2d 535, 540 (D. Md. 2002) (rejecting plaintiff's request for further discovery regarding independent contractor determination upon the United States's motion to dismiss because that finding was "controlled by the terms of the contract" and unnecessary). Furthermore, it is not likely that Fairview would possess an additional contract with Dr. Sandhu or Finney apart from the contract it has already entered into with their employer so as to afford application of the FHSCAA. As such, Plaintiffs' motion for an extension of time to conduct further discovery will be denied.

As an alternative argument, Plaintiffs argue that the United States should be estopped from asserting that Dr. Sandhu and Finney are not employees of Fairview, making them in turn employees of the United States and affording application of the FTCA and FSHCAA. (Pls.' Resp. Def.'s Mot. Dismiss 6-7, DN 26; Pls.' Resp. Defs.' Mot. Dismiss 11-12, DN 39). "Estoppel is an

13

equitable doctrine which a court may invoke to avoid injustice in particular cases." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001) (citing *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984)). The Sixth Circuit in *Michigan Express, Inc. v. United States*, 374 F.3d 424 (6th Cir. 2004), expounded on the concept of estoppel:

> "[T]he traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." The government, however, "may not be estopped on the same terms as any other litigant." Instead, "[a] party attempting to estop the government bears a very heavy burden" in sustaining its argument. At a minimum, the party must demonstrate some "affirmative misconduct" by the government in addition to the other estoppel elements.
>
> . . . "[A]ffirmative misconduct" is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant. The party asserting estoppel against the government bears the burden of proving an intentional act by an agent of the government and the agent's requisite intent.

*Id*. at 427 (internal citations omitted). Plaintiffs have not met their heavy burden to invoke the equitable remedy of estoppel. Plaintiffs have not pleaded or otherwise asserted any facts supporting the satisfaction of any of the elements of equitable estoppel. Plaintiffs' equitable estoppel argument fails.

Plaintiffs' claims against the United States will be dismissed with prejudice. As the Sixth Circuit has explained:

> Where a statutory right is being pursued, . . . and the defense raised is that the plaintiff or defendant does not come within the purview of the statute, the judicial acceptance of this defense, however it is accomplished, is the death knell of the litigation and has the same effect as a dismissal on the merits.

*Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986). Plaintiffs are unable to maintain an action against the United States because the FTCA and FHSCAA preclude a plaintiff from bringing an action against the United States based on injuries inflicted by individuals who are not employees or covered contractors. In other words, the United States "does not come within the

14

purview of the statute[s]" here because it cannot be sued unless it possesses an employer-employee or contractor relationship with the individuals alleged to have inflicted injury upon Plaintiffs. As such, Plaintiffs' claims against the United States are dismissed with prejudice. *See Zion*, 913 F. Supp. 2d at 389 (dismissing with prejudice purported FTCA claim against United States after finding tortfeasor to be an independent contractor); *see also Norton v. Murphy*, 513 F. Supp. 944, 947 (D. Colo. 1981) (same).

The dismissal of Plaintiffs' claims with prejudice moots the United States' motion to stay discovery. As such, that motion will be denied.

### B. Dr. Sandhu and Finney's Motion to Dismiss and Motion to Stay Discovery

Dr. Sandhu and Finney also move to dismiss Plaintiffs' claims against them, pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and to stay discovery. (Defs.' Mot. Dismiss 1, DN 35; Defs.' Mot. Stay Disc., DN 34).

Plaintiffs claim federal question and supplemental jurisdiction as the jurisdictional hooks affording them suit in federal court. (Compl. ¶ 15). Plaintiffs' federal question jurisdiction hook is premised on application of the FTCA and FSHCAA. However, "the FTCA requires that the named defendant in an FTCA action be the United States and only the United States." *Roman v. Townsend*, 224 F.3d 24, 27 (1st Cir. 2000) (citations omitted). In other words, a plaintiff cannot maintain an action against a non-United States defendant under the FTCA or FSHCAA. *See McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006) (stating that in a FTCA action, "the United States is the only proper defendant in such an action." (citations omitted)). As such, none of Plaintiffs' claims against Dr. Sandhu and Finney arise under federal law and federal question jurisdiction cannot afford them the basis to maintain a suit in federal court. *See Merrell Dow*

15

*Pharms., Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (plaintiff must state a claim under federal law to invoke federal question jurisdiction) (citing 28 U.S.C. § 1331).

Plaintiffs' remaining claims are all state law claims over which Plaintiffs originally sought to invoke the court's supplemental jurisdiction. (Compl. ¶ 15). Courts are strongly encouraged to consider the issue of dismissal after all federal claims have been dismissed and diversity jurisdiction is not present. *See Arrington v. City of Raleigh*, 369 F. App'x 420, 421 (4th Cir. 2010) ("[T]he district court should have remanded the case to state court upon the dismissal of all federal claims, even in the absence of a motion from the parties that it do so.").

As an initial matter, Plaintiffs make a last-ditch effort to invoke diversity jurisdiction in their response to the United States' motion to stay discovery by alleging, for the first and only time, that Plaintiffs "are subjects of the foreign state Dominica." (Pls.' Resp. Def.'s Mot. Stay Disc. 6-7, DN 32). Because "[f]ederal courts are courts of limited jurisdiction[,] . . . possess[ing] only that power authorized by Constitution and statute[,] . . . [i]t is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted) (citation omitted). Although the failure to plead diversity jurisdiction in the complaint is telling, it is not a fatal error; courts are willing to look into the record to determine if the factual basis for diversity jurisdiction exists. *See Farmer v. Fisher*, 386 F. App'x 554, 556-58 (6th Cir. 2010) (examining record for existence of diversity jurisdiction after noting, "[m]ost prominently, [Plaintiff's] complaint does not comply with the prima facie requirement that a plaintiff seeking diversity jurisdiction set forth the factual basis on which that jurisdiction is predicated."). Apart from the absence of allegations in the pleadings, subsequent filings, or record in general to support Plaintiffs' contention that they "are subjects of the foreign state Dominica[,]"

even if that statement was true, on the information before the Court at this time diversity jurisdiction does not exist.

Plaintiffs brought this action "individually and as parents, natural guardians, and next friends of K.T., a minor child . . . ." (Compl. 1). Under 28 U.S.C. § 1332(c)(2), "[f]or the purposes of [Section 1332,] . . . the legal representative of an infant . . . shall be deemed to be a citizen only of the same State as the infant or incompetent." "The general principle is that, when a minor sues, it is the domicile of the minor and not that of the next friend, suing on his or her behalf, that is scrutinized for purposes of the diversity jurisdiction of the federal courts." 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3615 (3d ed. Aug. 2019 update) (citations omitted); *see also Ziady v. Curley*, 396 F.2d 873, 874 n.1 (4th Cir. 1968) ("[T]he citizenship of the infant and not of the next friend determines whether diversity jurisdiction exists.") (citing *Woolridge v. McKenna*, 8 F. 650 (C.C.W.D. Tenn. 1881)). "Generally, . . . a minor's domicile is determined by reference to that of some other person[,]" usually by reference to either the father or mother's domicile. Wright & Miller, *supra* (citations omitted). "To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973) (citations omitted)).

"Plaintiffs reside [in] Bowling Green, Warren County, Kentucky"; there is nothing in the record or filings to suggest Plaintiffs intend to reside anywhere else. (Compl. ¶ 3). Since K.T.'s parents' domicile is Kentucky, K.T. is a citizen of Kentucky. Dr. Sandhu and Finney are citizens of Kentucky—they reside in Kentucky, they work at Fairview and the Medical Center, and such was stated in the "stipulations" in the state court action between Plaintiffs and the Medical Center and WHS. (Compl. ¶¶ 5, 7; Defs.' Mot. Dismiss, Ex. 1, ¶ 1; Defs.' Mot. Dismiss Ex. 2, ¶ 1).

"[Section 1332] ha[s] consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original) (citations omitted). Here, K.T., a plaintiff, is from the same state, Kentucky, as two defendants, Dr. Sandhu and Finney. For these reasons, Plaintiffs' fleeting reference to being "subjects of the foreign state Dominica" is insufficient to establish the existence of diversity jurisdiction in this case.

"A district court's decision whether to exercise . . . jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations omitted). The Sixth Circuit in *Gamel v. City of Cincinnati*, 625 F.3d 949 (6th Cir. 2010), explained the analysis this Court must conduct:

> "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ."
>
> There are, however, circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed. In *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195 (6th Cir. 2004), for example, the court found that the following factors weighed in favor of retaining supplemental jurisdiction over the remaining state-law claims: (1) the plaintiff had engaged in forum manipulation by deciding to dismiss his federal-law claims only after the case had been on the district court's docket for 11 months, (2) the parties had completed discovery, and (3) the defendants' summary-judgment motions were ripe for decision. Moreover, the district court "was familiar with the facts of the case and already had invested significant time in the litigation." This court therefore concluded that the district court had properly exercised supplemental jurisdiction over the remaining state-law claims.

*Id*. at 952 (internal citations omitted) (citation omitted). The Sixth Circuit also pointed to evaluation of the *Carnegie-Mellon* factors in determining whether a district court should retain supplemental jurisdiction over the claims: "the values of judicial economy, convenience, fairness, and comity." *Id*. (internal quotation marks omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 (1988)). Finally, "[w]hen the . . . federal-law claim[s] in the action [have been] eliminated at an early stage of the litigation, [a] District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon*, 484 U.S. at 351.

To start, *Gamel* and *Carnegie-Mellon* suggest that a rebuttable presumption of dismissal exists when all original jurisdiction claims have been dismissed. Also weighing toward dismissal is the fact that no evidence of "forum manipulation" exists here, unlike in *Harper*. Additionally unlike in *Harper*, the parties have engaged in very little, if any, discovery—this case is essentially still in its infancy having been on the docket only since May 14, 2019. Moreover, whereas summary judgment motions had been filed in *Harper*, this case remains at the motion to dismiss stage. Finally, this Court has not "invested significant time" in this case nor possesses such a familiarity of the facts so as to be better suited to handle this matter than any other court.

In evaluating the *Carnegie-Mellon* factors, Plaintiffs have sued the Medical Center and WHS in Kentucky state court asserting medical negligence against those entities on the same facts giving rise to the instant lawsuit, and that lawsuit remains ongoing. *Tyson v. Bowling Green-Warren Cty. Cmty. Hosp.*, No. 18-CI-01577 (Ky. Cir. Ct. Jan. 3, 2020); (Defs.' Mot. Dismiss, Ex. A, ¶¶ 18-214). "[C]omity of courts, whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere," in addition to "judicial economy, convenience, [and] fairness" dictate that this Court should dismiss the current action to give way to the potential consolidation of these two actions, all premised on state law claims. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting).

As the Court does not possess original jurisdiction over Plaintiffs' remaining claims against Dr. Sandhu and Finney and chooses to dismiss those claims rather than exercise its discretion and retain jurisdiction over them, Plaintiffs' remaining claims are dismissed without prejudice.

19

Additionally, the dismissal of Plaintiffs' remaining claims against Dr. Sandhu and Finney moots Dr. Sandhu and Finney's motion for a stay, so that motion will be denied.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (DN 21) is **GRANTED**, and Plaintiffs' claims against Defendant United States of America are **DISMISSED WITH PREJUDICE**.

2. Defendants' Motion to Dismiss (DN 35) is **GRANTED**, and Plaintiffs' claims against Defendants Manmeet K. Sandhu, M.D., and Heather Finney, C.N.M., are **DISMISSED WITHOUT PREJUDICE**.

3. Defendants' Motions to Stay Discovery (DN 31, 34) are **DENIED AS MOOT**.

4. Plaintiffs' Motion for Extension of Time (DN 23) is **DENIED**.

5. The Clerk is directed to strike this case from the active docket. This is a final and appealable order.

Greg N. Stivers, Chief Judge
United States District Court

January 22, 2020

cc: counsel of record